Good morning, Your Honor. May it please the Court, my name is Art Allen. I represent the appellant, John Medina. We're asking that this Court find the search to have occurred here to be unreasonable. The hill you have to climb, it seems to me, is to distinguish the fanny pack in Garcia from the backpack here. Correct, Your Honor. And I conceded in my brief that, despite argument of trial counsel, that I did not believe I could reasonably argue that the initial stop of Mr. Medina did not comply with Terry. But as Terry tells us, a stop which is reasonable at its inception may become unreasonable because of the scope or the intensity of the search. And that's exactly what happened here. As the Court knows from the facts, after Mr. Medina was stopped and a pat-down took place, no weapon was found on him. The officer had justified the pat-down search in part based upon the fact that as the officers drove up alongside Mr. Medina, he appeared to reach into his clothing. He was wearing loose clothing, which was another factor cited by Officer Burke to justify the Terry stop. When he was stopped, the backpack that he was wearing was removed for the sole purpose of allowing the officers to put both of his hands behind his back to do the form of pat-down that the police officers in Las Vegas conduct. That pat-down produced no weapons. The backpack had been placed on the hood of the patrol car. This is at approximately 1220 in the morning. It also is approximately in front of Mr. Medina's house, located on East Hacienda Boulevard in the City of Las Vegas. After finding nothing on Mr. Medina, and the only reason for the stop was that they looked into their car, he appeared to look into another car, and he walked around an apartment building and came back out and then continued walking down the same street he had been at. So the question is, did at that point the officers have a reasonable belief that he was armed and dangerous? And the answer is simply no. He produced identification. The identification was valid. He produced his Nevada felon ID card. He even gave them, according to the transcript, the business card of his state probation officer or parole officer, which they later put in a report written a couple of hours later. The police officer then tells us through his testimony that he decided after Mr. Medina spontaneously uttered the spontaneous utterance, there's only clothing in the backpack. The officer reached over, started to slide it, and according to him, the backpack felt heavier than clothing. Now, what heavier than clothing means I have no idea, Your Honor. Because when he felt it, he said he felt something hard inside. Now, this court and Terry and its progeny have all held that the illicit nature of what's felt during a pat-down must be readily apparent. What this officer felt was something hard. Could have been boots, which, in fact, are common clothing in the city of Las Vegas, particularly for young males who may be working construction. At that point, the officer unzipped the backpack and went into it, where he felt inside enclosed in a T-shirt, enclosed within a leather holster, he felt the butt or the grip of a revolver. How does this differ from Garcia? It differs, Your Honor, because in Garcia, the officer had been involved in a high-speed chase of an individual on a motorcycle. One officer, in this case there were two officers, that stop in Garcia ended on a dark, deserted highway. Mr. Garcia had a fanny pack open on his motorbike. When the officer felt that, he said something like, this feels like money, not something illegal, at which point Mr. Garcia immediately took off running and was later apprehended. When they opened that, it was currency in there and other contraband, I believe. That case really turned on the question of abandonment, not on a bad search of a backpack or a fanny pack in that instance. So contrary to the government's position, that case is easily distinguishable from this case. The officer, after, in this case, opening the backpack, conducting the search, then went back, headed towards Mr. Medina, who unfortunately fled the scene at that point, leaving in not the brightest move, leaving his valid I.D. with his home address in the officer's possession and, of course, the backpack and its contents. The case here, rather than being like Garcia, is more like Minnesota v. Dickerson. That was the case wherein the officer felt something in the pocket after a pat-down search, reached into the pocket and retrieved it. That is essentially what happened here. The apparent nature of feeling something hard in a backpack does not lead to a reasonable inference that it is a weapon or that the individual is presently dangerous. What this officer was doing, and I have no doubt from the record, they were out investigating, according to their testimony, a series of auto break-ins in that neighborhood. What the officer said when asked, was Mr. Medina free to go after the initial pat-down, his response was no, we were still conducting an investigation. That investigation was to look for the fruits of some crime, whether it was auto burglary, residential burglary, or who knows what. This was a general investigatory search. Nothing more, nothing less. And another thing that we learned from Terry is calling a search a stop-and-frisk doesn't make it a valid stop-and-frisk. There was no reasonable apprehension once these two officers had determined that Mr. Medina was lawfully in the vicinity of his own home, he had committed no crime, he had no weapons on him, which was where, again, as I said, the officers may have had a reasonable suspicion to search. If it please the Court, I'd like to save the rest of my time for rebuttal. Let me just ask you a question. How would you distinguish this case from Michigan v. Long? That's the one where they search the car and they can search the closed compartment. In Michigan v. Long, of course, that's since been extended beyond autos. It was held that any place that a suspect might reasonably reach, and in that context it was within the passenger compartment of a vehicle, the officers may search for their own protection. Normally, when a car stop is conducted, the officer approaches the vehicle, the individuals in the vehicle. That's one distinction there, where he has ready access, just like within a home perhaps they may be able to search the sofa that the person's sitting on while they're interviewing him because it's within his ready reach. Quite frankly, the officers' testimony in this case, that two police, armed police officers feared for their safety because they thought that this one young man could leap through them over to the hood of the police car, retrieve a backpack, unzip it and retrieve a handgun, is, I will say, unreasonable, to be kind to the officers' testimony. The distinction, and I concede that the Long case is a valid holding, but even there it still, going back to Terry, requires the reasonable apprehension on the part of the police officer that they might be able to reach for a weapon. There was not that reasonable apprehension here, nor was it reasonable in this case to believe that Mr. Medina could have reached for and retrieved a weapon. Thank you for your argument. We'll hear from the government at this time. Mr. Pomerantz. Good morning, ladies and gentlemen of the panel. Crane Pomerantz, Assistant United States Attorney for the District of Nevada. I would submit to the panel that there is one issue in this case, whether a stop and frisk, a Terry stop, extends to a backpack that has been on the defendant's person. In Long, the holding was very clear. Officers have a right to examine hiding places where a weapon can be concealed that a suspect could reach if he broke away from the officers. That language is broad, and it was not confined in the Supreme Court's decision to a vehicle, the factual setting that was presented there. The permissible scope of the frisk, then, is the search for weapons. We have the Supreme Court issuing a broad holding which suggests that police officers have a right to look for weapons to protect themselves. We have a panel in this Court, Garcia, applying Long and allowing officers to search a fanny pack that's set on a motorcycle near a defendant. The question was, well, the first question Your Honor asked was, well, how do you protect yourself from a fanny pack?   And I'm going to quote Justice Garcia from this case. I would submit to Your Honor that you cannot. If anything, we have a fanny pack open on a motorcycle, fanny pack being much smaller than a backpack. The chance of there being a weapon in a fanny pack is actually considerably  where a number of auto thefts and auto burglaries had occurred. It's after midnight. The defendant is looking into vehicles. Assuming what defense counsel says is correct and the defendant lives in that area, there's less of a reason for him to be taking this long loop around a building in his own neighborhood. For those reasons, and at this point I'm inclined to sit down or take any questions, it seems to me that given the officer's right to protect themselves and look for weapons in a bag, that what they did was merely an extension of their Terry stop. And so according to the record, the officers placed Mr. Medina up against the hood of the car. He set the backpack down on the hood. They did a pat down of him. The officer then walked around to the other side of the car to protect himself, pulled the bag over, felt that it was heavy, realized the defendant had lied to him about there only being clothes inside, and felt the outside of the bag in which he felt a hard metallic object. At which point, in the interest of protecting himself and his partner, he reached into the bag. Lo and behold, he found a .357 Magnum, which was stolen. For those reasons, I would suggest that Garcia is not at all distinguishable. This Court has recognized that police officers can conduct searches to protect themselves of areas that are in the immediate vicinity of a defendant. Okay. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision, and we'll proceed to the next case
judges: Lay, B.fletcher, Hawkins, Cjj